BENJAMIN MOWRY, JR. v. ASEL STEERE.

Where the estate of a deceased person has been represented insolvent, and commissioners have been appointed, before whom certain of the creditors have proved their claims; the report of the commissioners thereon, when allowed by the Court of Probate, is in the nature of a judgment, and constitutes a lien upon the real estate of the deceased, in favor of the creditors so proving their claims, which will be paramount to the title acquired by the purchaser under an execution in favor of an attaching creditor.

THIS was an action of trespass and ejectment, to recover possession of two lots of land in Burrillville. The plaintiff claimed title to these two lots under a deed from Duty Smith, administrator on the estate of Russell Aldrich. It appeared, that Russell Aldrich died intestate, March 13, 1819, seized in fee of the lots in question; and that on the 22d of April, following, Duty Smith and Amasa Aldrich were duly appointed and qualified as his administrators. The estate of Russell Aldrich was represented insolvent, and commissioners appointed, who proceeded in accordance with the statutes, and made report of the claims allowed against the estate, which report was received and established by the Court of Probate. On the 16th of April, 1822, Amasa Aldrich died, leaving Duty Smith sole administrator. In 1824, an account was presented to the Probate Court of Burrillville, by Duty Smith, as administrator, and allowed. In November, 1842, Duty Smith presented a second administrator's account with the estate of Russell Aldrich, which was disallowed by

Mowry v. Steere.

the Court of Probate of Burrillville, and an appeal taken
to the Supreme Court, where the decree of the Court be-
low was reversed, and the account allowed for the sum
of $4,494 75. At the September Term of the Supreme
Court, 1849, upon an appeal from the Court of Probate of
Burrillville, a decree was passed empowering Duty Smith,
in his capacity as administrator, to make sale, at public
auction, of so much of the real estate, whereof Russell
Aldrich died seized, as might be sufficient to pay the sum
of $4,494 75, the balance due to him by his account as
administrator, with all incidental costs, charges, and ex-
penses, and to execute a deed, vesting in the purchaser of
such real estate, all the right, title and interest, which the
said Aldrich had therein, at his decease. Under this de-
cree, the two lots described in the declaration, were sold
and conveyed to the plaintiff, August 2, 1849.

The defendant pleaded, that, at the death of Russell
Aldrich, said Aldrich was indebted to him in the sum of
$278 50; that this claim was never presented before the
commissioners for allowance, but on the 24th May, 1824,
more than three years after the administrator had been
qualified, the defendant sued out from the Court of Com-
mon Pleas a writ of attachment against the estate of Rus-
sell Aldrich, and had the same served upon the two lots
aforesaid : that at the November Term of said Court the
cause was duly entered, and was answered by Duty
Smith, as administrator, and at the November Term,
1827, the defendant recovered judgment for the sum of
$287 50, and costs, and, thereupon, execution issued,
and was levied on the land attached; and on the 19th of
April, 1829, the said two lots were sold by the sheriff to
the defendant, at public auction, and a deed executed by
the Sheriff, vesting in the defendant all the right, title,

and interest therein, that descended from Russell Aldrich to his heirs at law.

The jury trial was waived and the case tried to the Court.

*Steere*, for the defendant, contended, That the deed of the sheriff to the defendant was, in effect, the same as a conveyance by the heirs at law, and could only be defeated by a reversal of the judgment under which it was executed. The Statute (Dig. of 1822, § 28,) makes real estate liable for payment of debts, upon actions to be brought by creditors against the heirs at law or devisees, providing only that such actions shall not be brought within three years after the probate of the will or administration granted; and the proviso to the 30th Section, "that such actions shall not interfere with, prevent, or obstruct the settlement of any estate, whether solvent or insolvent, by executors and administrators, in manner by law provided," must be taken in connection with the general spirit and intent of the act, which was, that the administration should be closed within three years, and if the administrator neglects to bring it to a close within that period, he should not be allowed any advantage from his own wrong; that the act made no distinction between solvent and insolvent estates, and, if the creditor chose to run the risk of not presenting his claim to the commissioners, his right to make the attachment, after the three years, was perfect in either case; and, if the other creditors, or the administrator, wished to defeat this right, they could only accomplish their object by closing the administration within that time. That it did not appear that the estate could not have been settled within three years, and if it did, the Court would not inquire into the merits of the defendant's title, after the lapse of twenty

yeais, without proof of the strongest equities on the part of the plaintiff. *Nowell* v. *Nowell*, (8 Maine, 220.) *Hasty et ux* v. *Johnson*, (3 Maine, 282.) *King* v. *Burton*, (5 Maine, 49.) *Procter* v. *Newhall*, (17 Mass. 80.)

*Carpenter* and *Manchester*, for the plaintiff, contended. There are two modes of proceeding in the settlement of estates, one under the Statute in relation to intestate, and the other under the Statute in relation to insolvent estates, whether testate or intestate. The second statute is that which applies to this case. And the question is, whether, under this act, the heir has an absolute right of alienation after the lapse of three years and six months, or whether such right is subordinate to a lien of the creditors, for the claims established by the report of the commissioners. It would be startling to creditors, if it were held that all estates must be settled within three years, however numerous their claims or perplexing the questions that might arise out of them, and however much they might be litigated and their adjudication protracted by appeal, and that a failure to close the settlement within this time would expose their rights to be defeated by attachment. If such were the law, the attaching creditor would stand a better chance than the creditor who proved his claim before the commissioners. But this is not the law: the commissioner's report is in the nature of a judgment, and, being recorded in the appropriate tribunal, constitutes a lien upon the estate of the deceased, to which all titles growing out of an alienation by the heirs, or accruing under other legal proceedings, are subordinate. The record in the probate office is notice of the lien, and whoever takes the estate, whether by purchase from the heirs or by attachment, which gives to the attaching

creditor only the interest of the heirs, takes it subject to such notice. This is the only construction, which will reconcile the power of alienation, given by the statute to the heirs, with the paramount right of creditors to the payment of their claims out of the estate of the deceased.

BRAXTON, J. delivered the opinion of the Court.

The question in this case is, whether the defendant's title is absolute, or is subject to a lien, to be enforced by the administrator in favor of those creditors of Russell Aldrich, whose claims have been allowed by the commissioners. This depends entirely upon the statutes. By an English statute, passed in the reign of George II. in 1732, extending, by its terms, to the colonies, the real estates of deceased persons were made liable for debts upon suits in favor of creditors, in which the land might be attached. It was found, that the practical effect of this act was a very unequal distribution of the estate of the deceased among the creditors; and, expressly to remedy this evil, the act of 1738 was passed, entitled "An Act for the equal distribution of Insolvent Estates." By this act the administrator was required to represent the condition of the estate to the Town Council (then exercising probate jurisdiction,) before making payment to any creditor, and commissioners were to be appointed to ascertain all the claims, with a view to an equal distribution of the estate, real and personal; and creditors, who neglected to prove their claims before the commissioners, were barred from any dividend out of it. It was also provided that the administrator, upon due proof of a deficiency of personal property to pay the debts, should be licensed by the Supreme Court to sell the real estate for their payment.

In the Digest of 1798, a provision was introduced,

" that the real estate of all persons deceased should be liable for the payment of their just debts by actions to be brought against the heirs at law or devisees of such estate," and the manner of attaching and selling the same was prescribed. It was also provided that no action should be brought against any such heir or devisee, within three years after the probate of the will or administration granted, and that " nothing in that act contained, respecting the bringing of actions against heirs and devisees, should interfere with, prevent or obstruct the settlement of any estate, whether solvent or insolvent, by executors or administrators, in manner by law provided." By a subsequent enactment it was provided, " that when the goods and chattels of any person deceased shall not be sufficient to pay the just debts, which the deceased owed, *the expenses of his funeral and of supporting his family and settling his estate in manner prescribed by the act*," the Supreme Court should license the administrator to sell the real estate to make up the deficiency.

By another provision, (Dig. of 1822, p. 224, sec. 2,) the heir is prohibited from selling or encumbering the estate, within three years and six months after probate of the will or administration granted, but the same may be sold by the executor or administrator, if necessary, as prescribed by the act, provided however that, after the expiration of three years and six months, the heir or devisee may aliene, and the same shall not be liable for debts in the hands of the purchaser thereof or any other person.

It is claimed, as between the administrator and the attaching creditor, that, if at the expiration of three years the administrator has not procured a licence to sell and has not sold, his power to sell ceases, and the right is

given the creditor to attach and a sale under such attach-
ment passes an absolute title to the purchaser.   But the
difficulty in this construction is that there is six months,
after the time when the creditor may attach, within which
the heir is prohibited from alienating or encumbering the
estate, and within which it is expressly provided that
the administrator may sell. If in this intermediate period
the creditor attaches, as he may, and the administrator
sells, as he may, what is the consequence ?   Will the at-
tachment defeat the administrator's power to sell ?   It is
expressly provided that this right of the creditor shall not
interfere with or obstruct the administrator in the settle-
ment of the estate, and, as there can be no interference
with the administration of the personal assets, the inter-
ference must be at this point or no where.  During this
intermediate period, then, the right of the attaching credi-
tor is subject to that of the administrator.   But if there
is such a period at any time, after the creditor's right to
attach has accrued, there is no difficulty in extending the
period to any time required for the protection of the
creditors, who have proved their claims in the faith that
the estate would be first applied to their payment.

But it would seem by the terms of the act, that if, at
the end of three years and six months, the heir or de-
visee sell the estate, it is no longer liable for debts ; but,
at the same time, it is provided that the estate shall be
distributed among those, who prove their claims before
the commissioners.   Was it intended that under such a
sale by the heir or devisee, the estate and the proceeds
of the sale should be discharged from the claims of the
creditors ?   By another provision the real estate of any
person deceased may be divided among his heirs at law
or devisees after, and not before, all debts and funeral

charges are paid. And it is also provided, as between the heir or devisee and attaching creditor, that if the estate be aliened, the heir or devisee shall be personally liable for its value ; showing that the alienation was not intended to defeat even such creditors as had neglected to prove their claims before the commissioners. Now, it cannot be supposed that such creditors were intended to have an advantage over those who had used greater diligence to entitle themselves to a dividend out of the estate. While, then, the estate remains unaliened it must be subject to the power of sale of the administrator.

The defendant's counsel have cited the case of *Nowell* v. *Nowell*, (8 Maine, 220,) in which an application by an administrator for license to sell the real estate of his intestate to pay the expenses of administration was denied. The Court rest this denial on three grounds, none of which apply in this case. First : by the laws of Maine, no lien exists for the expenses of administration ; but our statute authorises a sale for this purpose and for the payment of funeral charges and the support of the family for six months. Second : the Court held, there had been unreasonable delay by the administrator, and, the real estate having long since been divided among the heirs, they would be injured by the license. It was assumed that there was no express limitation of the duration of the lien and the Court, in view of the inconvenience that might result to the heirs, if the administrator might delay to close his administration until after the estate had been divided amongst them and then enforce the lien, say that the discretionary power of the Court is to be invoked to prevent this evil by a refusal of the license. But in this case that discretionary power has been exercised and

the license granted, whether wisely or not, it is not for us to determine.

A third ground was that all debts were barred and the administrator not liable to pay them and, if he paid, ought not to have power to sell. But under our statute, in case of insolvency, the creditors proceed not by suit at common law, but prove their claims before the commissioners, whose report, when allowed by the Court of Probate, is in the nature of a judgment in their favor, to which the bar of the statute does not apply. Having proved their claims in this manner, the creditors are entitled to have the estate, as far as it will go, applied to their payment. It is no objection, as far as these debts are concerned, that the administrator has the shield of the statute against debts not so proved.

In the case cited of *Nowell* v. *Nowell*, the Court say, " that the law has a fixed period, by the expiration of which it seems to be contemplated, that the estate should be closed ;" referring to the four years, when suits against the administrator are barred, that the Courts in Massachusetts have uniformly refused to grant licenses to sell for the purpose of paying debts, after four years, *unless extraordinary circumstances render it proper*, and it is expected that the administrator will thereafter speedily close. But, if on seasonably closing at the expiration of the four years, or within a reasonable time thereafter, there should be a deficiency of personal assets to satisfy his administration account, the real estate might, in the *discretion* of the Court, be holden for the deficiency.

Whether the statute of 1758, for the equal distribution of insolvent estates, was intended, and was understood, to put an end entirely to attachment by creditors, is not clear ; its effect must have been to postpone such debts to

those proved under the commission. The inference would be, that the statute of George II. 1732, was rended entirely inoperative, from the fact, that it was thought necessary in 1798 to make an express enactment, giving the right of action to creditors who had not proved their debts. If so, since they could not proceed ag·inst the administrator, it was necessary to give them some remedy against any estate, which might be remaining after other debts had been satisfied. It could never have been intended that those creditors, who had neglected to prove their debts, should by commencing a suit against the heir obtain priority.

The attachment in this case, therefore, is no bar to the plaintiff's right to recover.